IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17-cr-30060 |
| ) | |
| JASON BALLARD and ) | |
| RYAN ROBINSON, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Jason Ballard's Motion to Suppress Evidence (d/e 101) and Defendant Ryan Robinson's Motion to Suppress Evidence (d/e 102) (collectively Motions). For the reasons set forth below, this Court recommends that the Motions should be denied.

BACKGROUND

On May 22, 2018, the Grand Jury issued a Superseding Indictment charging Defendants Ballard and Robinson with one count of possession with intent to distribute 50 grams or more methamphetamine, its salts, isomers, and salts of isomers, in violation of 21 U.S.C. § 841(a)(1). Superseding Indictment (d/e 73). The charge was based on a search of

the Defendants' rented vehicle on August 27, 2017, on U.S. highway 24 (U.S. 24) in Fulton County, Illinois, following a traffic stop of the vehicle. The officers searched the vehicle and found significant quantities of methamphetamine and marijuana. Defendants filed the Motions to suppress all evidence found in connection with the traffic stop and search.

This Court held an evidentiary hearing on the Motions on September 27, 2018. Defendant Ballard appeared at the hearing with his counsel James E. Elmore. Defendant Robinson appeared with his counsel Daniel Noll. The Government appeared through Assistant United States Attorneys Crystal Correa and Gregory Gilmore. Fulton County Sheriff's Deputies Josh Twidwell and Jordan Burton, and West Central Illinois Task Force (Task Force) Inspectors Ryan Maricle and Nick Hiland all testified at the hearing. Transcript of Proceedings (d/e 104) (T.), at 2. At the end of the hearing, the Court directed the parties to file written closing arguments. The briefing is now complete.

## STATEMENT OF FACTS

The evidence presented proved the following.

On August 27, 2017, Task Force officers were in the process of securing a warrant (Warrant) to search a house located at 2112 Rainbow Lane, Quincy, Illinois (Residence). The Task Force officers watched the

Residence in anticipation of securing the Warrant. T. 88-89. The officers noticed three vehicles parked in front of the Residence. Inspector Hiland and the Task Force knew the identity of the two individuals who drove two of the vehicles. The third was a black Jeep Grand Cherokee with California registration (SUV) parked outside the Residence. Officers checked the registration and learned that the SUV was registered to Enterprise Car Rental. T. 91.

Inspector Hiland directed officers to secure information regarding the rental of the SUV. The officers learned from the rental company that the SUV was rented in San Jose, California, on August 25, 2017, at 11:00 p.m. Inspector Hiland determined that the SUV traveled straight through to get to the Residence by the afternoon of August 27. T. 98. Inspector Hiland knew from his training and experience that California, specifically San Jose, was a source location for narcotics, and that traveling straight through to Illinois were elements "indicative of drug trafficking behavior." T. 99. Based on his experience with narcotics investigations and the "collection of everything that was going on," Inspector Hiland suspected the SUV was involved in drug trafficking activity. T. 99. Inspector Hiland directed the officers watching the Residence to advise him if the SUV left, and if so, to follow it. T. 92.

At 4:44 p.m. (16:44 military time), all three vehicles left the Residence.[1] Per Inspector Hiland's directions, officers followed the SUV. T. 52, 76-77, 92. Inspector Hiland subsequently secured the Warrant for the Residence. T. 95.

The SUV left Quincy and headed toward Peoria. While he was at the Adams County, Illinois, State's Attorney's Office getting the Warrant, Inspector Hiland contacted Inspector Maricle. Inspector Maricle contacted the Fulton County Sheriff's Office. Maricle was a Fulton County Deputy as well as a member of the Task Force. T. 94. Inspector Hiland told Inspector Maricle as follows:

> I advised him -- I advised him the make, model of the vehicle. The registration. I advised him that this was an ongoing narcotics investigation that we had been working that we were seeking a search warrant at the residence the vehicle had left for methamphetamine. That we believed that there would be multiple ounces of methamphetamine at the residence. We suspected as well that there would be multiple -- or there would be methamphetamine in the vehicle. I based this upon information we'd gotten from Enterprise Rental as well as the surveillance.

T. 95. Inspector Maricle contacted Deputy Twidwell and told him to be on the lookout for the SUV because the SUV may be carrying several ounces of methamphetamine. Inspector Maricle told Deputy Twidwell that the SUV

---

[1] The remainder of the evidence and testimony stated time in military time. The police reports and records use military time to report the time of various events.

had been at a drug house in Quincy, that the SUV was traveling toward Peoria, and that Task Force officers were following it. T. 6, 77, 81-82, 94-95.

Fulton County Sheriff's Sergeant Anthony Ewalt, Deputy Twidwell, and Deputy Burton took positions at various points along U.S. 24 to look out for the SUV. Deputy Twidwell was also a K-9 officer. He had his drug-sniffing dog Osu with him in his vehicle. Deputy Twidwell was in a marked squad car. T. 70. Deputy Twidwell spotted the SUV. He followed the SUV and used his onboard radar to determine whether the SUV was speeding. Deputy Twidwell testified that he tested his radar with tuning forks earlier that day to verify its accuracy. T. 7-8. Deputy Twidwell determined that the SUV was traveling at 59 miles per hour, in excess of the posted speed limit of 55 miles per hour. T. 9.

At 18:06, Deputy Twidwell reported to Fulton County Dispatch (Dispatch) that he was initiating a traffic stop on the SUV and gave the location. Government Exhibit 2, Detail Call For Service Report (Report).[2] At that time, Deputy Twidwell turned on his siren and lights to pull over the SUV. The SUV pulled over and stopped. T. 9-10, 15, 31. Deputy Twidwell

---

[2] Government Exhibit 2, the Report, is a one-page document. The Report states that it is the first page of a nine-page document. The other nine pages were not admitted into evidence.

stopped his vehicle behind the SUV. Sergeant Ewalt and Deputy Burton heard the transmissions between Twidwell and started traveling to Twidwell's location. T. 66, 82-83; Report. Deputy Twidwell got out of his vehicle and walked to the SUV. He asked the driver Ballard for license, registration, and insurance for the vehicle. T. 10-11. Deputy Twidwell testified that Ballard and Robinson exhibited "very stiffness, had trouble looking at me." Their behavior was not usual. Based on his experience, Deputy Twidwell stated that this behavior indicated that the Defendants were "being almost deceptive, not trying to show me their true emotions." T. 17. Ballard gave Deputy Twidwell his temporary Illinois driver's license and a rental car receipt. The receipt stated that a person named Bobbie Grant rented the SUV in San Jose California on August 25, 2017. The receipt listed Robinson as an additional driver of the SUV. The agreement did not reference Ballard. Ballard did not give Deputy Twidwell proof of insurance. T. 10-11, Government Exhibit 1, Rental Receipt.

    Deputy Twidwell walked back to his vehicle. He radioed to Dispatch at 18:11 to verify the information regarding the SUV. He did not provide Dispatch with information regarding Ballard's driver's license at that time. Sergeant Ewalt and Deputy Burton then arrived at the scene. T. 13. At 18:11:38, Deputy Twidwell took Osu out of his vehicle to conduct a free-air

sniff around the vehicle.  Report, at 1; T. 16-19.  Osu alerted on the SUV within 20 to 30 seconds of leaving the vehicle.  T. 19, 45.

Deputy Twidwell asked Ballard if there was anything illegal in the SUV.  Ballard said no.  T. 20.  Ballard and Robinson were ordered to exit the vehicle.  The two men were placed in handcuffs for officer safety.  Deputy Twidwell and Sergeant Ewalt searched the SUV and found methamphetamine and marijuana.  T. 22.

At 18:18:49, Deputy Twidwell radioed to Dispatch driver's license information on Ballard and Robinson.  T. 41, 55.  Dispatch sent back information on Ballard's driver's license approximately one to two minutes later.  See T. 68-69.  Deputy Twidwell, however, was conducting the search of the vehicle at that time.  T. 43.  Deputy Twidwell subsequently issued a traffic citation to Ballard for speeding.  Defendants' Exhibit 2, Citation.  Ballard and Robinson were also arrested and charged with possession of methamphetamine and cannabis with intent to deliver.  Report.

## ANALYSIS

An officer may stop a vehicle if he has probable cause to believe the driver of the vehicle is committing a traffic violation.  The officer further may conduct a free-air sniff around the vehicle by a trained drug-sniffing dog during the course of the traffic stop.  Illinois v. Caballes, 543

U.S. 405, 407 (2005). The officer, however, may not detain the vehicle and its occupants longer than would be reasonably necessary to complete a traffic stop in order to conduct the free-air sniff, unless the officer has some other basis for detaining the vehicle. Rodriguez v. United States, __ U.S. __, 135 S.Ct. 1609, 1612 (2015). The Seventh Circuit has discussed the holding of the Supreme Court decision in Rodriguez noting that:

> A seizure turns unlawful if it is prolonged in order to conduct a dog sniff (which requires bringing the dog to the scene of the stop, and therefore takes a while), without reasonable suspicion that there are illegal drugs secreted in the stopped vehicle.

U.S. v. Sanford, 806 F.3d 954, 959 (7th Cir. 2015). An additional valid basis to detain the vehicle beyond the time necessary to conduct a traffic stop exists if the officer has reasonable suspicion of criminal activity, such as possession of illegal drugs. Id. at 1616; see United States v. Guidry, 817 F.3d 997, 1005 (7th Cir. 2016).

An officer may also detain a vehicle and its occupants if he has probable cause that the occupants are carrying illegal drugs. An officer with such probable cause may search the vehicle. Caballes, 543 U.S. at 407; see Guidry, 817 F.3d at 1005 (The officers conducting a traffic stop had an additional independent basis to detain a vehicle once a narcotics sniffing dog indicated that drugs were present).

In this case, Deputy Twidwell had probable cause to stop the SUV for speeding. Defendant Robinson for the first time in his written closing argument questions whether Deputy Twidwell's tuning forks were accurate. <u>Supplemental Brief on Defendant Robinson's Motion to Suppress Evidence (d/e 108)</u>, at 7. Robison cites no authority to support his challenge to the accuracy of the tuning forks. The Court finds Deputy Twidwell's testimony sufficient to establish that his radar was functioning properly. He had probable cause to stop the SUV for speeding.

Less than seven minutes after stopping the SUV, Deputy Twidwell's K-9 Osu alerted on the vehicle sometime between 18:12 and 18:13. At that point in time, Deputy Twidwell had probable cause to believe that the Defendants were carrying illegal drugs in the SUV. <u>Caballes</u>, 543 U.S. at 407. Based on that probable cause, Deputy Twidwell and Sergeant Ewalt conducted the search and found the methamphetamine and cannabis.

The total delay associated with the traffic stop before Deputy Twidwell had probable cause to detain Ballard and Robinson and search the SUV was less than seven minutes. Conducting a traffic stop took longer than seven minutes. Deputy Twidwell took five to six minutes to exit his vehicle; walk to the Defendant's vehicle; secure license, registration, and insurance information; walk back to his vehicle; and radio the

registration information to Dispatch. The Court's finds six minutes to be a reasonable amount of time for conducting these portions of the traffic stop. Deputy Twidwell testified that he had to check the registration information for the vehicle and the driver's license information for the driver before he could write a citation. See T. 22-23, 38-39, 42-43, 57; see also, T. 57-69. Deputy Twidwell testified that it took one to two minutes to get verification of driver's license information from Dispatch. See T. 68-69. Deputy Twidwell then needed to write the citation. The Court finds that the total traffic stop, absent the free-air sniff, would have taken significantly more than seven minutes.

Less than seven minutes after the beginning of the traffic stop, however, Osu alerted on the Defendants' vehicle. At that point, the delay to the Defendants caused by the traffic stop ended. At that point, the officers had probable cause to detain Robinson and Ballard and search the vehicle for illegal drugs because of Osu's positive alert. Caballes, 543 U.S. at 407; Guidry, 817 F.3d at 1005. The delay caused by the traffic stop lasted less than seven minutes. There was no unreasonable delay in the detention based on the traffic stop. The subsequent detention search was based on probable cause and was valid. The Motions should be denied.

Robinson and Ballard argue that Deputy Twidwell unreasonably delayed completion of the traffic stop by stopping the traffic stop procedures to check driver's licenses and write the ticket in order to conduct the free-air sniff. Their argument misses the point. The issue is how long Robinson and Ballard were detained because of the traffic violation. Rodriguez, 135 S.Ct. at 1614-16. A constitutional violation occurs if the officers detained Ballard and Robinson based on the traffic violation for a period of time that was longer than would be necessary to complete a traffic stop and issue a ticket. Id. Here, Deputy Twidwell detained the Defendants for less than seven minutes based on the traffic stop. In this case there was no need to bring the dog to the scene of the stop as it was already present. Osu alerted 20 to 30 seconds after 18:11:38, less than seven minutes after Deputy Twidwell activated his siren and lights at 18:06. The free-air sniff outside of the SUV not was not a search, and so, did not violate the Defendants' rights. Caballes, 543 U.S. at 408. Prior to Osu's alert, Deputy Twidwell had conducted the traffic stop in a reasonable manner. The free-air sniff did not change the character of the stop and detention that was otherwise valid and did not extend beyond the time justified by the stop. Id. at 407-08.

Once Osu alerted, Deputy Twidwell detained Ballard and Robinson based on probable cause that the two were carrying illegal drugs.  See Caballes, 543 U.S. at 407; Guidry, 817 F.3d at 1005.  The Defendants were no longer detained based on the traffic stop.  Seven minutes is a relatively brief time to conduct a traffic stop.  The seven-minute delay due to the traffic stop did not extend beyond the time needed to conduct the traffic stop.  Caballes, 543 U.S. at 408.  Defendant's arguments to the contrary are not persuasive.  Once Osu alerted, the continued detention and the search of the vehicle were validly based on probable cause.  The Motion should be denied.

In that alternative, even if Deputy Twidwell detained the Defendants beyond the time needed to conduct the traffic stop, Deputy Twidwell and the officers involved in the event had reasonable suspicion that the SUV may have contained illegal drugs, and so, properly detained the SUV beyond the time needed to complete the traffic stop.  The collective knowledge doctrine allows one officer, when directed by other officers, to rely on the aggregate knowledge of the directing officers.  The directing officers must have reasonable suspicion or probable cause to stop and the stop must be no more intrusive than would have been permissible for the

directing officers under the circumstances.  United States v. Williams, 627 F.3d 247, 252-53 (7th Cir. 2010).

Reasonable suspicion is "something less than probable cause but more than a hunch."  United States v. Baskin, 401 F.3d 788, 791 (7th Cir. 2005).  Reasonable suspicion is not an onerous standard:

> Reasonable suspicion requires "considerably less" than a preponderance of the evidence and "obviously less" than probable cause to effect an arrest. United States v. Esquivel–Rios, 725 F.3d 1231, 1236 (10th Cir. 2013). "To satisfy the reasonable suspicion standard, an officer need not 'rule out the possibility of innocent conduct,' or even have evidence suggesting 'a fair probability' of criminal activity."
> Id. (quoting Poolaw v. Marcantel, 565 F.3d 721, 736 (10th Cir. 2009)). Indeed, we have held that factors consistent with innocent travel may contribute to reasonable suspicion. United States v. Valles, 292 F.3d 678, 680 (10th Cir. 2002). As long as an officer has "a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely than not that the individual is *not* involved in any illegality."
> United States v. Johnson, 364 F.3d 1185, 1194 (10th Cir. 2004).

United States v. Petit, 785 F.3d 1374, 1379-80 ((10th Cir. 2015) (emphasis in the original) (cited with approval after the Rodriguez decision in Sanford, 806 F.3d at 959).  Deputy Twidwell could rely on the collective knowledge of Inspectors Hiland and Maricle who directed him to be on the lookout for the SUV.  Inspectors Hiland and Miracle and Deputy Twidwell collectively needed to have reasonable suspicion to extend the detention beyond the time needed to conduct the traffic stop in order to conduct the free-air sniff.

In this case, Inspectors Hiland and Maricle directed Deputy Twidwell to be on the lookout for the SUV because they believed it might have contained several ounce of methamphetamine. Inspector Hiland based this on his experience and all of the information he had about the SUV. He knew that the SUV was rented in a location in San Jose, California, which was a known narcotics source. The SUV was driven straight through to the Residence. Inspector Hiland had sufficient information to secure the Warrant to search the Residence where the vehicle was located for illegal drugs based on probable cause. The owners of the two other vehicles parked at the Residence were known to the Task Force. The SUV and the other two vehicles left the Residence all at once. Based on all of this information and his experience, he suspected that the SUV was being used in drug trafficking and might contain methamphetamine. He forwarded that information to Inspector Maricle who alerted Deputy Twidwell.

Deputy Twidwell found the SUV and followed it. Upon determining that the driver of the SUV was speeding, he conducted a lawful traffic stop. During the course of the traffic stop, Deputy Twidwell observed that the Defendants were very stiff. Deputy Twidwell knew from his experience that this behavior indicated that the Defendants were trying to hide their true emotions. Taken together with the information collected by Inspector

Hiland, Deputy Twidwell had "a particularized and objective basis for suspecting" that the occupants of the SUV "may be involved in criminal activity." Petit, 785 F.3d at 1380; see Sanford, 806 F.3d at 956. Deputy Twidwell had a constitutionally valid basis to "initiate an investigatory detention even if it [was] more likely than not that the individual [was] *not* involved in any illegality." Id.

Defendants argue that Deputy Twidwell was not credible because his police report did not contain every factual detail to which he testified. The police report did not mention the fact the SUV was at a drug house before it left Quincy. Deputy Twidwell did not note that the information about the SUV came from the Task Force. Deputy Twidwell did not mention in the police report that Ballard and Robinson exhibited stiffness when he asked for license, registration, and proof of insurance.

The Court has reviewed Deputy Twidwell's police report of the incident. The Court also observed Deputy Twidwell testify and the other witnesses testify. The Court evaluated Deputy Twidwell's demeanor and his testimony. The Court finds that Deputy Twidwell's testimony was credible. The claimed omissions from the police report do not indicate any lack of credibility. Deputy Twidwell's testimony is consistent with the testimony of the other witnesses and the other evidence presented.

Deputy Twidwell's demeanor was also consistent with a person testifying truthfully. Deputy Twidwell was credible. Based on the collective knowledge of the Inspectors Hiland and Maricle, and the observations of Deputy Twidwell, Deputy Twidwell had reasonable suspicion to conduct an investigative stop and free-air sniff around the SUV by Osu. See Petit, 785 F.3d at 1380; see Sanford, 806 F.3d at 956.

Deputy Twidwell's detention of the Defendants on reasonable suspicion was extremely brief. Within 20 to 30 seconds of Deputy Twidwell getting Osu out of his vehicle, Osu alerted on the SUV. The brief detention to conduct the 30-second free-air sniff was clearly reasonable and did not violate the Defendants' rights. Cf. Sanford, 806 F.3d at 959 (eight minute detention of an automobile and its occupants based on reasonable suspicion of the presence of drugs was reasonable). The stop and the search were good even if Deputy Twidwell detained the Defendants past the time reasonably needed to conduct the traffic stop.

THEREFORE, THIS COURT RECOMMENDS that Defendant Jason Ballard's Motion to Suppress Evidence (d/e 101) and Defendant Ryan Robinson's Motion to Suppress Evidence (d/e 102) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within

fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).  See <u>Local Rule</u> 72.2.

ENTER:   October 25, 2018

*s/ Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE